IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


JOHN RUSH, #270-927            :
Plaintiff

                               :

     v.                       CIVIL ACTION NO.  DKC-04-3661

                               :

SHANNON McALISKEY and
MICHAEL DORESH               :
Defendants

                             oo0Ooo

**MEMORANDUM**

Pending is a *pro se* complaint, as supplemented, filed by John Rush, an inmate confined in the Eastern Correctional Institution. Plaintiff is challenging the manner by which his supervision was transferred to Florida under the Uniform Act for Out-of-State Parolee Supervision and the Interstate Compact for Adult Offender Supervision.[1] Plaintiff demands $100,000.00 damages for pain and suffering.

Defendants Shannon McAliskey and Michael Doresh,  Maryland parole and probation agents, through counsel, have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment. Plaintiff has filed a reply in opposition. The dispositive motion shall be construed as one for summary judgment pursuant to Fed R. Civ. P. 56.  No hearing is necessary.  <u>See</u> Local Rule 105.6 (D. Md. 2004).  For the reasons set forth below, the court will enter judgment in favor of Defendants and against Plaintiff.

---

[1]The Interstate Compact for Adult Offender Supervision ("new compact") replaced the Uniform Act for Out-of State Parole Supervision ("old compact") on July 1, 2002.  The old compact is codified at Md. Corr. Serv. Code Ann. §§ 6-201 through 6-205 (1999  Repl. Vol.). The new compact is codified at  Md. Corr. Serv. Code Ann. §§ 6-201 through 6-215 (1999 Repl. Vol, 2004 Supp.).

## I.  Standard of Review

Summary judgment is granted when no genuine dispute of material fact exists and the moving party

is entitled to judgment as a matter of law.  See Fed. R. Civ. P. Rule 56(c); Anderson v. Liberty Lobby,

Inc. 477 U.S. 242, 250 (1986). "[S]ummary judgment should be granted in those cases in which it is

perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is

unnecessary to clarify the application of the law." Haavistola v. Community Fire Co. of Rising Sun, 6 F.3d

211, 214 (4th  Cir. 1993) (citations omitted).

> By its very terms, this standard provides that the mere existence of *some* alleged factual
> dispute between the parties will not defeat an otherwise properly supported motion for
> summary judgment. . . .  Only disputes over facts that might affect the outcome of the suit
> under the governing law will properly preclude the entry of
> summary judgment.  Factual disputes that are irrelevant or unnecessary will
> not be counted.

Anderson v. Liberty Lobby, Inc., 477 U. S. at 247-48. If the non-moving party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial," summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U. S.

317, 322 (1986).   In ruling on a motion for summary judgment, a court must view the facts presented in

the light most favorable to the plaintiff.  See  Jones v. Buchanan, 325 F.3d 520, 523 (4th Cir. 2003).

## II.  Claims Presented

The gravamen of Plaintiff's complaint is that Agent McAliskey failed to process forms to transfer

his supervision to Florida before he left Maryland and this error invalidated his Maryland supervision.

Specifically, Plaintiff alleges that "Maryland," presumably Defendants Shannon McAliskey[2] and Michael

Doresh, violated unspecified "federal guidelines by transferring his supervision from Maryland to Florida."

_____

[2]Plaintiff has submitted documentation that Agent McAliskey is no longer employed in the Division
of Parole and Probation. Paper No. 8, Exhibit 2.

Paper No. 1 at 3.  Petitioner claims the agents were required to have his Maryland supervision transferred to Florida before he was released to a detainer lodged by Florida.  Had this been done, he claims information about his Maryland supervision would have been provided to the Florida judge who ruled on his Florida violation of probation case.  See id.  Plaintiff reasons that when the Florida judge placed him on probation on January 29, 2002,  a "conflict of interest" was created which caused his Maryland probation "to lose it's [sic] effectiveness because Maryland failed to process the interstate compact before the plaintiff was (handed over) [sic] to Washington County to await Florida to take custody."  Paper No. 4 at  3.  As a result of this alleged violation, Plaintiff's Maryland supervision became "ineffective from 1-10-02 until now."  Paper No. 1 at 3.

## III.  Facts

The following undisputed facts are reflected in the verified records submitted by counsel for Defendants.  On January 8, 1998, Plaintiff was sentenced in the Circuit Court for Baltimore City to fifteen years incarceration, all but seven years suspended, beginning March 4, 1997, for theft over $500.00.  Paper No. 12, Exhibit 1, Attachment A.  On March 12, 1998, Plaintiff was sentenced to two years imprisonment for child abuse, to be served consecutive to his first sentence, with 96 days pretrial credit.  Paper No. 12, Exhibit 1, Attachment B.  On January 10, 2002, Plaintiff was released from the custody of the Maryland Division of Correction on mandatory supervision. Paper No. 12, Exhibit 1, Attachments C & D.  On the same day,  he was released to the State of Florida on a detainer.[3]  Paper No. 12, Exhibit 1, Attachment D.  At that time, the Maryland Division of Correction issued a mandatory supervision release

---

[3] While it is not clear from the record, it appears Plaintiff was transferred to a facility in Washington County to await transfer to Florida, presumably to answer charges that he had violated conditions of parole imposed by a Florida state court.  See Paper No. 4 at 3 (Plaintiff asserts that Maryland failed to process the interstate compact before  he was "(handed over) [sic] to Washington County to await Florida to take custody."  Paper No. 4 at  3.

certificate to Plaintiff containing the standard conditions of release as well as a special condition to participate in a sex offenders' program. Paper No. 12, Exhibit 1, Attachment D.  Petitioner was to remain under mandatory supervision until November 29, 2005, and on probation until January 10, 2007.  Paper No. 12, Exhibit 2, Attachment A.

Upon his release from the Maryland Division of Correction, Plaintiff was sent to Florida to answer to an outstanding criminal matter. On or about January 29, 2002, nineteen days after his release on Maryland supervision, Petitioner received 18 months probation in Broward County, Florida for a parole violation in case number 85-11187CF10A. Paper No. 12, Exhibit 2, Attachment B.  On March 8, 2002, Agent McAliskey sent Plaintiff forms to complete to effect transfer of supervision to Florida. Paper No. 12, Exhibit 2, Attachment C.  On March 15, 2002, Agent McAliskey notified the Parole Commission that Plaintiff had been released from the Florida Division of Correction on probation. Paper No. 1, Attachment Paper No. 12, Exhibit 2, Attachment E.  She indicated that, according to his supervising agent in Florida, if Plaintiff paid restitution, the extradition fee, and attorney's fees owed, he would be released from Florida probation supervision.  Id.  On April 4, 2002, Agent McAliskey asked Florida to accept supervision of Plaintiff based on the Maryland convictions. Paper No. 12, Exhibit 2, Attachment G.  The request was declined based on the assumption that Plaintiff was not a Florida resident.  Paper No. 12, Exhibit 2, Attachment H.  On October 30, 2002, Agent Timeka Dickens submitted another request to Florida for Plaintiff's supervision. Paper No. 12, Exhibit 2, Attachment I.  This time, Florida accepted supervision, effective on or about January 14, 2003. Paper No. 12, Exhibit 2, Attachment B.

On August 4, 2003,  Plaintiff's Florida probation agent notified the Maryland Interstate Unit that Plaintiff had failed to attend therapy sessions required as a condition of his Maryland parole and requested

a retake warrant. Paper No. 12, Exhibit 2, Attachment J.[4]  Agent Doresh contacted the Maryland Parole

Commission to request the warrant which issued on August 7, 2003.[5]  Paper No. 12, Exhibit 1, Attachment

E, Exhibit 2, Attachment K.  It appears that the warrant was executed and Plaintiff was returned to

Maryland custody. Paper No. 12, Exhibit 2, Attachment A.

On October 30, 2003, following a hearing before Parole Commissioner Maceo Williams, Plaintiff's

release was revoked. Paper No. 12, Exhibit 1, Attachment G.[6]   Plaintiff appealed to the Circuit Court

for Baltimore City, arguing that the "contract" governing his release was voided when supervision was

transferred to Florida and the contract had to be modified before the Commission had authority to revoke

release. Paper No. 12, Exhibit 1, Attachment H at 4. Before the Circuit Court ruled on the merits of the

appeal, the Commission moved to remand the case because: the record did not contain the waiver and

admission form; the commissioner had not checked any rule violation in the written decision; it appeared

that the commissioner had believed in error that Plaintiff had absconded from supervision and failed to

register as a sex offender; and it appeared that Plaintiff had, in fact, contested the violation charge.[7]  Paper

---

[4]  The record shows that he attended only an initial intake session on May 15, 2003. He was terminated from the program on May 31, 2003, due to his failure to attend therapy sessions.  Paper No. 12, Exhibit 2, Attachment J.

[5]The warrant request indicated that Plaintiff had been convicted of the rape and sexual abuse of his daughter and that he had served three major incarcerations in the Maryland Division of Correction. Paper No. 12, Exhibit 2, Attachment K.

[6] Plaintiff admitted the violation.  Hearing Transcript, Paper No. 12, Exhibit 1, Attachment F at 2.

[7]  During the hearing, Plaintiff stated that he was unfamiliar with the Florida mass transit system, had taken a bus to his therapy session, arrived twenty minutes late for the meeting, and was not allowed to attend the session after it had started. Hearing Transcript, Paper No. 12, Exhibit 1, Attachment F at 7-8. Petitioner said, "The only reason I'm before you Commissioner, is because I missed a class." Id.  During the hearing, the commissioner informed Petitioner that he is required by law to register as a sex offender for the rest of his life and advised him that he should not have "dropped out of sight." Id.

No. 12, Exhibit 1, Attachments H & I.  Following a *de novo* hearing, Commissioner Perry Sfikas on July

23, 2004,  revoked Plaintiff's release, awarded credit from January 10, 2002 to May 13, 2003, and

rescinded 1200 diminution of confinement credits.  Paper No. 12, Exhibit 1, Attachment J.

## IV.  Analysis

Mindful that Plaintiff is a *pro se* litigant, the court has accorded his pleadings liberal construction.

See Haines v. Kerner 404 U.S. 519, 520 (1972).  It is unclear whether Plaintiff is bringing a cause of action

under the compacts or under 42 U.S.C. §1983.  For this reason, the court will construe the complaint as

raising both causes of action.

### A. Cause of Action

To the extent Plaintiff's intent is to bring a private cause of action under the compacts, his claim

fails.  Similarly, he has no cause of action under the compacts by way of a civil rights action under 42

U.S.C. §1983. There is no evidence that Congress intended to create a new federal right for parolees in

the compacts. The old compact addresses the duties and responsibilities among the States; it does not

confer any rights to the offenders transferred under its provisions.  See Md. Corr. Serv. Code Ann CS §

6-203 (1999 Repl. Vol.). Similarly, new compact addresses the obligations of the member "compacting"

states, and does not afford any rights to offenders. See Md. Corr. Serv. Code Ann. CS, § 6-202(b) (1999

Repl. Vol., 2004 Supp.).  Accordingly, neither the old nor new compact provides a private cause of action

brought by a parolee subject to the compact.  See Lines v. Wargo, 271 F. Supp.2d 649 (W.D. Pa 2003)

(finding no private cause of action under the old compact for offenders).

Further, only a right "unambiguously conferred" by Congress supports a cause of action under

§1983. See Gonzaga University v. Doe, 536 U.S. 273, 282-83 (2002).  Whether a plaintiff is seeking to

enforce a federal statutory right through a private cause of action implicit in the statute or through §1983,

the first question is whether "congress intended to create a federal right." Id. "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted.'" Id. citing Cannon v. Univ of Chicago, 441 U.S. 677, 692 n.13 (1979). While §1983 permits a plaintiff to enforce individual rights secured elsewhere, it does not itself create substantive rights. See Gonzaga, 536 U.S. at 285.  Inasmuch as neither compact contains any such unambiguous language conferring a right on a parolee such as Plaintiff, his complaint must be dismissed.

### B. Qualified Immunity

Even if there were a  private right of action is created under either compact that could be vindicated under 42 U.S.C. § 1883,   Defendants would be entitled to qualified immunity. There is a two-step process for analyzing whether public officials are protected by the doctrine of qualified immunity on summary judgment. See  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The threshold question is whether "taken in the light most favorable to the party asserting the injury, ... the facts alleged show [that] the officer's conduct violated a constitutional right."  Id.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.; see Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002).  If the facts alleged show a constitutional violation, the second question is whether the constitutional right  alleged to have been violated was  "clearly established in the specific context of the case." Saucier, 533 U.S. at 201-02.

In this matter, Plaintiff asserts that Defendants' failure to notify Florida authorities in a timely fashion violated the compacts and that he was no longer under Maryland supervision at the time of the alleged violation.  As discussed above, the procedures invoked complied with the compacts and Plaintiff has not shown any provision of applicable law that was violated.  Plaintiff has failed to show that Agent McAliskey violated the old or new compact or the civil rights statute, 42 U.S.C. §1983, in transferring his supervision

to Florida.  Plaintiff has also failed to show that Agent Doresh contravened compact rules or § 1983 by initiating revocation proceedings against him. Plaintiff's contention that his mandatory supervision somehow terminated when he was placed on probation in Florida is devoid of legal basis.  Following his release from incarceration in Maryland, Plaintiff remained at all times under mandatory supervision, and as a result of his Maryland convictions was obligated to follow the standard conditions of release as well as the special condition to participate in a sex offenders' program. When Plaintiff violated the conditions of his release, the release was revoked.

Moreover, even if Plaintiff could show how either Defendant had violated his rights, any such right would not have been clearly established as of the time of the events in question, given Plaintiff's inability to pinpoint any such violation.  Thus, Defendants would be entitled to qualified immunity from this damage action.

## V. Conclusion

For the reasons stated above,  Defendants' motion will be granted and judgment entered in favor Defendants. A separate Order consistent with this Memorandum follows.

_____              _____/s/_____
Date                                                          DEBORAH K. CHASANOW
                                                                   United States District Judge